WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michele Lee, | ) | No. CIV 03-624-TUC-HCE |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| State Farm Mutual Automobile Insurance | ) | |
| Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

The Magistrate Judge has jurisdiction over this matter by consent of the parties pursuant to 28 U.S.C. § 636(c).

Pending before the Court are the parties' Cross-Motions for Summary Judgment.  For the following reasons Plaintiff's Cross-Motion for Summary Judgment (hereinafter Plaintiff's XMSJ) is granted and Defendant's Cross-Motion for Summary Judgment (hereinafter Defendant's XMSJ) is denied.

I.  PROCEDURAL BACKGROUND

Plaintiff Michele Lee (hereinafter Plaintiff) originally filed this lawsuit in Pima County Superior Court, Tucson, Arizona, on November 19, 2003 seeking declaratory judgment regarding insurance coverage for injuries she sustained in an automobile accident.

On December 18, 2003, Defendant State Farm Mutual Automobile Insurance Company (hereinafter Defendant) removed the action to this Court based upon diversity jurisdiction and the case was assigned to the Honorable John M. Roll.   Defendant subsequently filed a Motion for Change of Venue to the Northen District of Illinois which the Court denied. (June 7, 2004 Order)

On June 7, 2004, the case was reassigned to Magistrate Judge Nancy F. Fiora in light of the parties consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

On January 5, 2005,  the Court granted the parties' Stipulation for Certification of Question of Law to the Arizona Supreme Court.[1] (January 5, 2005 Order) The Court adopted the parties' phrasing of the question for certification as follows:

> Whether Arizona's Uninsured Motorist Act, ARS § 20-259.01, requires uninsured motorist coverage for injuries caused by an accident resulting from striking or avoiding tire debris on a roadway.

(January 5, 2005 Order, p. 2; September 22, 2004 Stipulation, p.1)

On April 19, 2005, the Arizona Supreme Court declined to accept jurisdiction of the certified question.

On July 1, 2005, the parties filed the pending Cross-Motions for Summary Judgment regarding the issue of uninsured motorist coverage under Arizona law.

On July 8, 2005 this matter was reassigned to the undersigned Magistrate Judge in light of Magistrate Judge Fiora's retirement.

---

[1]The parties stressed that "[t]here is no controlling precedent in decisions of the Supreme Court and Appellate Courts of the State of Arizona regarding this question." (September 22, 2004 Stipulation, p. 1)

On January 31, 2006, the Court heard oral argument on the Cross-Motions for Summary Judgment.

II.        FACTS

The record reveals the following undisputed facts taken largely from the parties' Joint Statement of Facts in Support of Cross-Motions for Summary Judgment on Coverage Issue and Defendant's Supplemental Statement of Facts.[2]

On May 15, 2003, Plaintiff was driving a 2000 Honda Civic in the right lane of westbound Interstate-10 (hereinafter I-10) from Tucson, Arizona, to Phoenix, Arizona. She was driving the speed limit of 75 miles per hour behind a large SUV. The SUV swerved to the left and successfully avoided a piece of commercial tire tread debris located in the roadway. Plaintiff also took evasive action to avoid the tire tread. Plaintiff lost control of her vehicle and it overturned landing in the eastbound lanes of I-10.

There is no claim in the record that Plaintiff: (1) was under the influence of drugs, alcohol or medication; (2) fell asleep, suffered a stroke or fainted; (3) was forced off the interstate by cross-winds or that other environmental factors such as dust, rain, or bright sunlight played any part at the time of the accident; or (4) that her vehicle experienced sudden mechanical failure. Rather, it was the evasive action to avoid the tire tread debris that caused the accident.

Plaintiff does not know the circumstances of how the tire tread debris came to be in the roadway of westbound I-10. There are no witnesses as to how or when the tire tread came to be in the roadway of westbound I-10.

Plaintiff suffered significant bodily injuries and is now rendered quadriplegic.

_____

[2]Although Plaintiff's XMSJ refers to her Separate Statement of Facts, Plaintiff ultimately did not submit a Separate Statement of Facts. (Plaintiff's September 30, 2005 Notice of Clarification)

Plaintiff's parents, Norman and Pat Lee, are named insureds under an automobile insurance policy issued by Defendant in Illinois, Policy No. 1289-684-13 (hereinafter the Policy). It is assumed that Plaintiff is an insured household member under the Policy.

The Policy includes uninsured motorist coverage which provides in pertinent part:

**UNINSURED MOTOR VEHICLE – COVERAGE U**

We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of **an uninsured motor vehicle**. The **bodily injury** must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle**.

**Uninsured Motor Vehicle** – means:
1.    a land motor vehicle, the ownership, maintenance or use of which is:
      a.  not insured or bonded for bodily injury liability at the time of the accident; or
      b.  insured or bonded for bodily injury liability at the time of the accident; but
      (1) the limits of liability are less than required by the financial responsibility act of the state where **your car** is mainly garaged;
      (2) the insuring company denies coverage or is or becomes insolvent;....

(Joint Statement of Facts, p. 2) (emphasis in original)

The Policy defines a "car" in pertinent part as:

**Car** – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads.

(Id.)

The Policy's uninsured motorist arbitration provision states in pertinent part:

**Deciding Fault and Amount – Coverage U, U1 and W**

Two questions must be decided by agreement between the **insured** and us:

1.    Is the **insured** legally entitled to collect damages from the owner or driver of the **uninsured motor vehicle** or **underinsured motor vehicle**; and
2.    If so, in what amount.

(Id.)

III.        THE UNINSURED MOTORIST ACT OF ARIZONA (hereinafter UMA)

The Uninsured Motorist Act of Arizona (hereinafter UMA) states in pertinent part:

If an insured makes a bodily injury or death claim under uninsured or underinsured motorist coverage based on an accident that involved an unidentified motor vehicle and no physical contact with the motor vehicle occurred, the insured shall provide corroboration that the unidentified motor vehicle caused the accident..."corroboration"

- 4 -

means any additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to the insured's representation of the accident.

ARS § 20-259.01(M).

## IV.        ISSUE

Is there uninsured motorist coverage under Arizona law and the Policy for an accident arising from evasive action taken to avoid tire tread debris on a roadway?

## V.        SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, a party may seek summary judgment where there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Although reference is made to the movant's "burden," Rule 56 places no evidentiary burden on the moving party beyond that which is required to prevail at trial.  Therefore, while the adverse party must offer evidence sufficient to raise a genuine issue of fact on an issue for which that party has the burden of proof, the moving party need provide nothing more than a reference to those materials on file in the case that support the movant's belief that there is an absence of any genuine issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).  Once satisfied, the burden shifts to the opponent to come forward with " 'specific facts showing that there is a genuine issue for trial.' "  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)).  *See also  Celotex,* 477 U.S. at 324 (the opponent must demonstrate through production of probative evidence that an issue of fact remains to be tried.)   Indeed, a party opposing summary judgment may not rest on mere allegations or denials in his pleading. Fed. R. Civ. P. 56(e).  Nor may the opponent rely upon  conclusory

or speculative testimony to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distrib.,* 69 F.3d 337, 345 (9th Cir. 1995).

When judging the evidence at the summary judgment stage, a district court does not make credibility determinations or weigh conflicting evidence but the court is required to view all inferences in the light most favorable to the non-moving party. *Musick,* 913 F.2d at 1394. The ultimate question is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The mere existence of a scintilla of evidence supporting the non-movant's position will be insufficient; there must be evidence from which the jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 252. If the factual context makes the non-movant's claim implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita,* 475 U.S. at 587.

## VI.    DISCUSSION

Negligence cannot be presumed. Negligence, however, can be circumstantially inferred by application of the doctrine of *res ipsa loquitur. McDonald v. Smitty's Super Valu, Inc.,* 757 P.2d 120, 122 (Ariz. App. 1988); *McKeever v. Phoenix Jewish Community Center,* 374 P.2d 875, 877 (Ariz. 1962) The elements of *res ipsa loquitur* are:

(1)    the accident must be of a kind that ordinarily does not occur in the absence of negligence;

(2)    the accident must be caused by an agency or instrumentality subject to the control of the defendant; and

(3)    the plaintiff must not be in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to her injury.[3]

---

[3]A fourth element–that the accident must not have been due to any negligent or voluntary action on the part of the plaintiff–was once included among the conditions necessary to establish *res ipsa loquitur,* but has been eliminated with the advent of comparative fault. *Lowrey v. Montgomery Kone, Inc.,* 42 P.3d 621, 623 n.6 (Ariz. App. 2002) (*citing Cox v. May Dep't. Store Co.,* 903 P.2d 1119, 1123-24 (Ariz. App. 1995)).

*Lowrey,* 42 P.3d at 623 (*citing McDonald,* 757 P.2d at 123).   Once the elements of *res ipsa loquitur* are established, the plaintiff can avoid summary judgment and reach the jury without direct proof of negligence.  *Id.*; *Cox*, 903 P.2d at 1122.  Whether *res ipsa loquitur* applies is preliminarily a question of law for the court.  *Ward v. Mount Calvary Lutheran Church,* 873 P.2d 688, 692 (Ariz. App. 1994).

The source of the piece of the tire tread debris on the roadway in Plaintiff's lane of travel can only reasonably be one of two: (1) it came off a tire of a vehicle that had previously traveled in that area or vicinity; or (2) it was improperly secured on and fell off of a vehicle that had previously traveled in that area or vicinity.  In either case, the operator or owner of the vehicle was remiss under state law.

State law requires all vehicles to have proper tire equipment.  Such tire equipment means that:

> A solid rubber tire on a vehicle shall have rubber on its entire traction surface at least one inch thick above the edge of the flange of the entire periphery.

ARS § 28-958(A).  Moreover, unless such equipment is in good working order and adjustment, such vehicle shall not be driven on a roadway.  ARS § 28-981(A)(1).  Any vehicle that is in an unsafe condition that endangers a person shall not be driven or permitted to be driven on a roadway.  ARS § 28-921(A)(1)(a),(b),(c).

Further, state law does not permit destructive or injurious material to be deposited on roadways and requires the person who did so to remove or cause to be removed such destructive or injurious material.  ARS § 28-898(B).  This affirmative obligation extends to vehicles carrying loads fastened insecurely which present hazards to other users of the roadway or which could result in accidents causing physical injuries from loose, detached or dropped items from such loads.  ARS § 28-1098(A),(B),(C)(2).

Arizona law further recognizes and imposes a duty on an operator of a motor vehicle to avoid colliding with objects on a roadway, provided the object is on the roadway lawfully and not the result of someone's negligence:

- 7 -

A person shall not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the circumstances, conditions and actual and potential hazards then existing. A person shall control the speed of a vehicle as necessary *to avoid colliding with any object*, person, vehicle or other conveyance *on*, entering *or adjacent to the highway in compliance with legal requirements and the duty of all persons to exercise reasonable care for the protection of others.*

ARS § 28-701(A) (emphasis added).

As a matter of judicial notice, I-10 is a roadway where motorists routinely encounter tire debris.   (Defendant's XMSJ, p.10) Defendants argue that Plaintiff "can offer only speculation, but no evidence, that another motorist was at fault for causing the piece of tire tread to be in the roadway of westbound I-10...because there is no evidence tending to prove that the tire was at the location due to the culpable conduct of another motorist as opposed to other possible causes, such as a tire failure due solely to a product defect or a tread separation in circumstances involving no fault (e.g., due to sudden, unexpected tire deflation after an unexpected puncture.)" (Id. at p.2); or whether "it cam[e] off elsewhere and...moved to that location as a result of impacts with other vehicles..."(Id. at p.7); or "whether the tire tread was blown into the road by wind." (Id. at p.8).

The law does not require a plaintiff to rule out every conceivable explanation for an accident other than negligence before the doctrine of *res ipsa loquitur* may be invoked. *Lowrey,* 42 P.3d at 624.  "If proof so precise were possible, *res ipsa* would serve little purpose." *McDonald,* 757 P.2d at 123.  In fact, "'[t]he first requirement [to establish *res ipsa loquitur*] involves nothing more than a weighing of the probabilities as to the cause of certain events; if the probabilities weigh heavily in favor of the event having been negligently caused, then *res ipsa loquitur* applies.'" *Lowrey,* 42 P.3d at 624 (*quoting Tucson Gas & Elec. Co. v. Larsen,* 506 P.2d 657, 658 (Ariz. App. 1973)).

There is no circumstance or occasion where tire tread debris on a roadway is arguably there "in compliance with legal requirements" and the result of another having exercised "reasonable care for the protection of others."  ARS § 28-701(A).  Consequently, the only conclusion that can be drawn is that the tire tread debris in the instant case: (1) came off a

tire of a vehicle that had previously traveled the area or vicinity where Plaintiff took evasive action; or (2) had been improperly secured on and fell from a vehicle that had previously traveled the area or vicinity where Plaintiff took evasive action.  In either case, the deposit of tire tread debris on the roadway was in contravention of law.

Arizona statutes cited *supra* impose upon motorists a duty[4] to know the condition before, during, or after: (1) a vehicle driven has lost tire tread; or (2) of the load carried by a vehicle, and obligates such motorist in either instance to remove or cause to be removed any debris deposited.   The aim and objective of this duty is so as to: (1) "not endanger the driver or other occupant or a person on the highway,"  ARS § 28-981(A)(2); or (2) not create "an unsafe condition that endangers a person," ARS § 28-921(A)(1)(a); or (3) not leave "destructive or injurious material" likely to injure a person or vehicle on the roadway, ARS § 28-898(A),(B); or (4) not create "a hazard to other users of the highway," ARS § 28-1098(B); or (5) "exercise reasonable care for the protection of others" ARS § 28-701(A).  It is at the very least negligent not to be aware of a vehicle's tires before, during, or after it has lost tire tread; or of a vehicle's load before, during, or after it has lost part of its load consisting of tire tread.  In either case, such motorist has a duty to remove or cause to be removed such tire tread debris.

A.     The UMA

The UMA, ARS § 20-259.01, was enacted to protect those who are injured by the negligence of financially irresponsible motorists.   The Arizona Supreme Court has recognized that:

> The whole purpose of uninsured and underinsured motorist coverage is to allow a prudent person to protect himself or herself against the universe of risks.

---

[4]Indeed, violation of some Arizona traffic statutes is considered to be negligence per se.  *See Smith v. Johnson*, 899 P.2d 199, 205 (Ariz. App. 1995) (Arizona traffic statute was "a negligence per se statute.");  *Newman v. Piazza,* 433 P.2d 47 (Ariz. App. 1967) (same).

*Lowing v. Allstate Ins. Co.,* 859 P.2d 724, 729 (Ariz. 1993).  In the instant case, the circumstances of when and how the tire debris came to be deposited by a negligent motorist, as described above, is unknown.  Consequently, such motorist and vehicle is unidentified and is functionally uninsured as to Plaintiff because there is no insurance that is in fact available and collectible.  It is doubtful that at the moment Plaintiff took evasive action that paramount in her mind was the question of whether the tire tread was there due to negligent under-inflation, defective manufacture or design, or some errant wind blowing it on the roadway. This is one in the universe of risks a prudent person seeks to protect against and there is no conceivable reason "why the legislature would have intended this small class of claims to be excluded from the scheme of compensation." *Anderson v. State Farm Mut. Auto. Insur. Co.,* 652 P.2d 537, 542 (Ariz. 1982) (J. Feldman, specially concurring).

    B.      The Policy

    The Policy requires that bodily injuries sustained by the insured be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.  It is well-established in Arizona law that the "arising out of" clause in insurance policies means that the accident must have arisen out of the inherent nature of the automobile. *Brenner v. Aetna Insurance Co.,* 445 P.2d 474, 477 (Ariz. App. 1968) (*citing and endorsing the holding in Mason v. Celina Mutual Ins. Co.,* 423 P.2d 24, 25 (Colo. 1967)) Whether a vehicle is driven for transportation of self or of a load, such vehicle must be operated, maintained, and used in a safe manner and condition as required by statute.  *See* ARS §§28-701(A); 28-898(A),(B); 28-921(A)(1)(a),(b),(c); 28-958(A); 28-981(A)(1),(2); 28-1098(A),(B),(C)(2). The loss of tire tread from either a tire or a load, on a roadway is not some act wholly disassociated from and independent of the vehicle's use.  It is, rather, an act arising out of the inherent nature of that vehicle.

    To protect insurance carriers from the danger of paying fraudulent claims, protection is given by the standard of corroboration needed to support the claimant's contention that the accident was caused by an unidentified motor vehicle.  ARS § 20-259.01(M).  "[T]he statute

thus does not require that the claimant provide independent corroboration of the actual existence of a 'miss and run' vehicle. The statute only requires corroboration of the claimant's depiction of an accident that was caused by such a vehicle." *Scruggs v. State Farm Mut. Auto. Ins. Co.,* 62 P.3d 989, 994 (Ariz. App. 2003). Corroboration does not mean that the claimant must ascribe negligent maintenance of a tire or the negligent securing of a load to a specific vehicle before that standard is met. Rather, what is required is that the claimant's representation of the accident be confirmed or supported by any additional testimony, fact or evidence that strengthens and adds weight or credibility. Once the claimant has done this, the statutory requirement has been met even if the claimant has not provided independent evidence that an unidentified motor vehicle actually existed. *Id.* The statute does not require more. *Id.* at 994-995.

To otherwise require that the claimant ascribe negligence to a specific motor vehicle as Defendant posits before coverage under Arizona law is provided would be tantamount to making Arizona a virtual "physical contact" jurisdiction and allow the insurer to limit or restrict coverage required by law in derogation of public policy.[5] The UMA is remedial in nature and is liberally construed to effectuate that remedial purpose. *Calvert v. Farmers Ins. Co. of Ariz.,* 697 P.2d 687 (Ariz. 1985).

> Interpreting the statute to require coverage of damages caused by unidentified motorists advances its protective goal; interpreting it in a way that does not require such coverage frustrates that goal. It is unlikely that the legislature intended to protect the injured person from an uninsured motorist responsible enough to stop and be identified but not from a motorist, insured or not, irresponsible enough to cause an accident and then flee.

*Lowing,* 859 P.2d at 727.

---

[5]The Policy has a specific provision that:

**Uninsured Motor Vehicle** – means:

...2. a "hit and run" land motor vehicle whose owner or driver remains unknown and which strikes:

a. the insured...

(Joint Statement of Facts in Support of Cross-Motions for Summary Judgement on Coverage Issue, p. 2) (emphasis in original) The parties agree that under Arizona law, a "physical contact" requirement in UM coverage is not enforceable. (Id.)

VII.        CONCLUSION

The parties have consistently identified the threshold question as: whether Arizona's Uninsured Motorist Act, ARS § 20-259.01, and the subject Policy compels uninsured motorist coverage for injuries caused by an accident resulting from striking or avoiding tire tread debris on a roadway.   As a matter of law the UMA contemplates the type of accident presented herein and Plaintiff is now required to provide corroborating evidence sufficient to meet the requirements of subsection M of the UMA.   Subsection M does not require that Plaintiff prove her claim.   *Scruggs,* 62 P.3d at 992.   Satisfying the corroboration requirement does not necessarily mean that Plaintiff is entitled to recovery on her claim.   *Id*.

The policy requires the claimant to show by reliable competent evidence that she sustained bodily injury caused by an accident arising out of the maintenance, operation, or use of an uninsured motor vehicle.   As a matter of law on this record, Plaintiff has met that requirement.   To conclude otherwise would create an exclusion which limits or restricts coverage in derogation of statute and public policy.

Accordingly,

IT IS ORDERED that Plaintiff's Cross-Motion for Summary Judgment (No. 50) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Judgment (No. 48) is DENIED.

DATED this 31st day of March, 2006.


_____
Héctor C. Estrada
United States Magistrate Judge